UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NORMAN M.,[1]

Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

DECISION AND ORDER

1:24-CV-00564-MAV

## INTRODUCTION

On June 14, 2024, Norman M. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI").[2] ECF No. 1. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c), ECF No. 7, and the Commissioner cross-moved for judgment on the pleadings, ECF No. 13.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 7] is denied, and the Commissioner's motion for judgment on the

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for DIB under Title II of the Social Security Act are found in Part 404 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for SSI payments are found in Part 416. Because the relevant regulations in both Parts are practically identical, citations in this Decision and Order to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

pleadings [ECF No. 13] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

### I. Plaintiff's Application

Plaintiff filed his application for DIB and SSI on November 29, 2018. Administrative Record ("AR") at 428–437.[3] He alleged a disability onset date of October 18, 2018. AR at 178. The Social Security Administration ("SSA") denied his claims on February 27, 2019, and denied on reconsideration on May 31, 2019. AR at 115–116, 143–144.

### II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via telephone on November 21, 2022, for a hearing before an Administrative Law Judge ("ALJ"). AR at 38–62.

During the hearing, Plaintiff testified that he was looking for a job and had been working by shoveling snow. AR at 41–42. He had a driver's license, but it was suspended for failing to pay for insurance. AR at 42. Plaintiff had a difficult time hearing, especially with a lot of background noise. AR at 43, 45–46. His attorney said that he had an IEP while in school, a "major deficit when he was younger," and was

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

on a second-grade level in reading, math, reasoning, and spelling. AR at 43. Plaintiff said that he could read "[a] little bit. Not really." AR at 44. He had jobs in the past where he had some conflicts with coworkers, and he would struggle to remember, so he had to ask questions. AR at 48–49. He struggled to work at a fast pace. AR at 51. He graduated from high school with an IEP diploma. AR at 50.

A vocational expert ("VE"), Tim Andenmatten, also testified and said that a person with an RFC identical to that which the ALJ ultimately found Plaintiff to have could perform Plaintiff's past relevant work as a kitchen helper, and could perform jobs of a marker, photo copy machine operator, and cafeteria attendant. AR at 54–56. A hypothetical person with the same RFC but limited to a reasoning level one and a light job could perform jobs of a paper pattern folder and a casing splitter. AR at 58–60.

### III. The ALJ's Decision

On March 8, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB or SSI. AR at 17–37.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[4] through December 31, 2023. AR at 19. Plaintiff had engaged in gainful activity since the alleged onset date, but it was not substantial. AR at 19–20. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[5] the ALJ

---

[4] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[5] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

determined that Plaintiff had the following severe impairments: status post left ankle fracture, status post open reduction and internal fixation in the left ankle, hearing loss in both ears, learning disorder, and intellectual disorder. AR at 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 20.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[6] ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except he was limited to "simple work-related tasks" and to a "minimal degree of oral communications." AR at 24.

At step four of the sequential evaluation, the ALJ found that Plaintiff had no past relevant work, was a younger individual, and had a high school diploma. AR at 28. The ALJ found that considering Plaintiff's age, education, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

perform, including a marker, kitchen helper, photocopying machine operator, cafeteria attendant, paper pattern folder, and casing splitter. AR at 29. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 30.

On April 16, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."[7] *See also* 42 U.S.C. § 1382c(a)(3)(A) (adopting the same definition of "disabled" for SSI eligibility).

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision.

---

[7] Claimants must also meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

Whereas the relevant time period for a DIB application runs from the alleged onset date to the date of application, "[t]he relevant time period for an SSI benefits application is 'the date the SSI application was filed, to . . . the date of the ALJ's decision.'" *See Williams v. Colvin*, 98 F. Supp. 3d 614, 631–32 (W.D.N.Y. 2015) (quoting *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012)).

The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)

(noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues in his motion for judgment on the pleadings. First, he argues that the ALJ erred by not ordering updated intelligence testing. ECF No. 7-1 at 6–8. Second, he argues that the ALJ's step five determination conflicted with the Dictionary of Occupational Titles ("DOT") and is not supported by substantial evidence. ECF No. 7-1 at 10–13.

In response, the Commissioner argues that the ALJ was not required to obtain updated intelligence testing and that the ALJ's RFC and step five findings were supported by substantial evidence. ECF No. 13-1 at 6–21.

For the following reasons, the Court agrees with the Commissioner.

### I. The ALJ did not need to order intelligence testing.

Plaintiff argues that the ALJ failed to develop the record regarding his learning disorder and intellectual disability because he was last tested in high school. ECF No. 7-1 at 6–8. Plaintiff specifically contends that the ALJ should have ordered

updated intelligence testing. ECF No. 7-1 at 7.

The Commissioner responds that the RFC is supported by substantial evidence. ECF No. 13-1 at 7–10. The Commissioner further contends that updated cognitive testing was not required because the record contained adequate evidence of Plaintiff's cognitive and intellectual disorders in the form of his testing in 1994, the consultative examination conducted by Christine Ransom, Ph.D., and his activities of daily living. ECF No. 13-1 at 10–16.

In light of the non-adversarial nature of the administrative proceedings, an ALJ has "an obligation to develop the record . . . regardless of whether the claimant is represented by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) "Thus, when the evidence of record is inadequate to determine whether a claimant is disabled, 'the ALJ has an obligation to seek additional information to supplement the record.'" *Arneatha S. v. Comm'r of Soc. Sec.*, No. 24-CV-06187-FPG, 2026 WL 820253, at *3 (W.D.N.Y. Mar. 25, 2026) (quoting *Jennifer M. v. O'Malley,* No. 23-CV-494, 2024 WL 5378976, at *4 (N.D.N.Y. July 23, 2024)). When the evidence on the record is inadequate to determine whether a claimant is disabled, "the ALJ has an obligation to seek additional information to supplement the record." *Mantovani v. Astrue,* No. 09-CV-3957, 2011 WL 1304148, at *3 (E.D.N.Y. Mar. 31, 2011).

Here, the ALJ was not obligated to supplement the record with updated intelligence testing. The ALJ found that Plaintiff had severe impairments at step two including a learning disorder and an intellectual disorder. AR at 20. The ALJ concluded that those impairments, and Plaintiff's hearing loss, equated to limitations

to simple work and minimal oral communications. AR at 25. Substantial evidence supported that determination. The ALJ relied on the evidence showing that Plaintiff's intellectual function measured in the "deficient to borderline" level and that Plaintiff had an IEP and received special education services while in school. AR at 25 (citing AR at 621–622). The ALJ also considered Dr. Ransom's examination, which showed Plaintiff to be in the low average range in intellectual functioning. AR at 25 (citing AR at 642–644). Finally, the ALJ considered Plaintiff's activities of daily living, which included handling personal care, chores, and shopping, as well as driving, playing games and sports, and working by shoveling snow. AR at 26. This evidence substantially supported the RFC finding, without the need for additional testing. *See Helwig v. Comm'r of Soc. Sec.*, No. 1:17-CV-0859 (WBC), 2018 WL 6330242, at *3 (W.D.N.Y. Dec. 4, 2018) ("Additional testing was not required because there were no inconsistencies in the record and the evidence in the record was sufficient to make a determination.").

Moreover, the additional testing Plaintiff requests for the first time on appeal would not alter the ALJ's determinations. The ALJ already found Plaintiff's learning and intellectual disorders to be serious impairments at step two. AR at 20; *cf. Katherine B. v. Comm'r of Soc. Sec.*, No. 20-CV-1898MWP, 2023 WL 2071475, at *4 (W.D.N.Y. Feb. 17, 2023) (remanding for a consultative intelligence evaluation where the ALJ determined at step two that the plaintiff did not have a medically determinable learning disability).

At step three, learning and intelligence disorders could potentially meet

Listings 12.02 and 12.05. Yet the ALJ already considered those listings and found they did not apply because, regardless of Plaintiff's IQ score, he did not have an extreme limitation in one, or a marked limitation in two areas of mental functioning listed in Paragraph B. *See* AR at 20–23; 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, §§ 12.02, 12.05. The ALJ's Paragraph B determination was supported by substantial evidence of Plaintiff's activities of daily living as reported during the hearing and as reported and observed by medical providers and the consultative examiner. *See* AR at 21–22. Additional intellectual testing would have no impact on the applicability of the listings, because the record is sufficient to support the ALJ's finding.

Moreover, at step four, Plaintiff's functioning as a result of his learning disability, and not a raw IQ score, informed his RFC. The ALJ had sufficient evidence of Plaintiff's functioning through Plaintiff's testimony, job history, medical records, and the consultative examiner's report. A number score resulting from additional testing would not alter what Plaintiff is capable of, and Plaintiff's abilities are already reflected in the evidence considered by the ALJ. *See, e.g., Lawler v. Astrue*, 512 F. App'x 108, 111 (2d Cir. 2013) ("While it is true that the ALJ did not calculate a new IQ score for [the claimant], [ ]he was not required to do so").

In sum, substantial evidence supported the ALJ's conclusion of functional limitations resulting from Plaintiff's learning and intellectual disorders.

## II. Substantial evidence supports the ALJ's step five determination.

Plaintiff argues that the ALJ's determination at step five is not supported by substantial evidence because the DOT descriptions of the jobs the ALJ determined

Plaintiff could perform conflict with the RFC regarding communicating. ECF No. 7-1 at 10–12. Plaintiff contends that the ALJ erred because he did not ask the VE to address the apparent conflict. ECF No. 7-1 at 12. Additionally, Plaintiff argues that Plaintiff could not perform the jobs found at step five because he had a second-grade reading level, and the jobs were classified as language level one. ECF No. 7-1 at 12–13.

The Commissioner responds that there is no conflict between the RFC and the jobs identified at step five because the DOT lists the "People" function for each job as "not significant." ECF No. 13-1 at 16–18. The Commissioner further contends that the ability to take instructions does not mean that more than minimal oral communication is required. ECF No. 13-1 at 18. Regarding Plaintiff's reading level, the Commissioner argues that the record establishes that Plaintiff can read, so he can perform unskilled work with language levels of one, consistent with the VE's testimony. ECF No. 13-1 at 19–21.

Under a 2000 Social Security Administration Policy Interpretation Ruling ("SSR") governing the use of vocational expert and vocational specialist evidence, and other reliable occupational information in disability decisions, "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether

the claimant is disabled." *Id.*; *see also Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019).

"'[Vocational] expert testimony and the DOT conflict where they disagree in categorizing or describing the requirements of a job as it is performed in the national economy.'" *Patricia K. v. Comm'r of Soc. Sec.*, No. 5:20-CV-37 (ATB), 2020 WL 7490323, at *17 (N.D.N.Y. Dec. 21, 2020) (quoting *Schmitt v. Astrue*, No. 5:11-CV-0796 (LEK/ATB), 2012 WL 4853067, at *3 (N.D.N.Y. Oct. 11, 2012)).

Here, Plaintiff's argument that the jobs the ALJ identified at step five require more communication than the RFC permits is belied by the DOT definitions for those jobs. Plaintiff argues that the identified "jobs all have oral communication inherent in the job" because they have a "People" function of 8, which requires "'[t]aking [i]nstructions'" and "'[a]ttending to the work assignment instructions or orders of supervisors.'" ECF No. 7-1 at 10–11 (quoting Appendix B – Explanation of Data, People, and Things, 1991 WL 688701). The RFC limits Plaintiff to "a minimal degree of oral communications." AR at 24. The "People: 8" requirement that Plaintiff follow instructions for the step five jobs does not conflict with the RFC's limitations.

In particular, jobs at the "People: 8" level, like those identified by the ALJ, allow for minimal communications under the definition provided.[8] *See Ridley G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-773 (CFH), 2021 WL 4307507, at *13 (N.D.N.Y. Sept. 22, 2021) ("Positions categorized as involving level 8 interaction can be

[8] The full definition for "People: 8" jobs is "8 Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." 1991 WL 688701.

performed by individuals who require limited interaction.").

Further, the DOT does not specify that the "instructions" required for "People: 8" jobs must be oral. *See* 1991 WL 688701. Plaintiff's RFC only contains a limitation in oral communications, so there is no apparent conflict. Nor is this a situation where the ALJ should have clarified that point. Plaintiff's current argument revolves around his limitation in "listening tasks." ECF No. 7-1 at 11. Yet as the Commissioner points out, four of the six jobs identified do not require hearing at all—the DOT says, "Hearing: Not Present - Activity or condition does not exist." *See* Marker (DOT 209.587-034), Photocopy Machine Operator (DOT 207.685-014), Paper Pattern Folder (DOT 794.687-034); Casing Splitter (DOT 525.687-014). As such, the jobs identified at step five do not conflict with Plaintiff's RFC, and the ALJ was not required to account for any conflict through the VE's testimony.

Finally, Plaintiff argues that his reading level conflicts with the step five findings of jobs characterized as language level one, which require reading and "[r]ecogniz[ing] meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute." ECF No. 7-1 at 12–13; Appendix C: Components of the Definition Trailer, 1991 WL 688702 (defining language level one requirements). Plaintiff's RFC limits him to "simple work-related tasks," and does not include a limitation in reading. AR at 24. The jobs identified at step five are consistent with the limitation to simple tasks, as they all have a Specific Vocational Preparation (SVP) level of 1 or 2, which corresponds to "unskilled work." *See* SSR 00-4p, 2000 WL 1898704 at *3 ("unskilled work corresponds to an SVP of 1-2"); 20 C.F.R. § 416.968(a)

("unskilled work" is "work which needs little or no judgment to do" and involves "simple duties that can be learned on the job in a short period of time . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.").[9]

Plaintiff does not argue that the RFC should have contained a specific limitation in reading. Even if he had, the ALJ's RFC was supported by substantial evidence, and the ALJ was not required to also include a reading limitation. *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff Norman M.'s motion for judgment on the pleadings [ECF No. 7] is DENIED, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is GRANTED. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: October 8, 2026
Rochester, New York

Meredith Vacca

HON. MEREDITH A. VACCA
United States District Judge

[9] Marker (DOT 209.587-034), Kitchen Helper (DOT 318.687-010), Photocopy Machine Operator (DOT 207.685-014), and Cafeteria Attendant (DOT 311.677-010), have an SVP of 2, while Paper Pattern Folder (DOT 794.687-034) and Casing Splitter (DOT 525.687-014) have an SVP of 1.